UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

  v.

JEFFREY A. JUSTICE,

      Defendant.

Case No.  10-CR-101
Judge Gregory L. Frost

## ORDER

### I.  Procedural Background

Defendant was indicted on April 20, 2010 and charged with Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §922(g)(1) and 18 U.S.C. §924(a)(2).  Defendant entered a plea of Not Guilty to the charge and on May 13, 2010 Defendant filed a Motion to Suppress Evidence (Doc. # 14).  The Government filed a Response in Opposition (Doc. # 16) on May 20, 2010.  The Court conducted an evidentiary hearing on May 24, 2010.

### II.  Issues Presented

Defendant argues that the affidavit in support of the search warrant that was issued contains a materially false statement that was made knowingly and intentionally or with reckless disregard for the truth.  Defendant maintains that the false statement contained in the affidavit was necessary to the finding of probable cause.  It is the position of Defendant that if the false information is disregarded, no probable cause existed for the issuance of the search warrant.

Defendant also submits that the affidavit for the search warrant is deficient because it does not contain sufficient probable cause to link the suspected drug activity to Defendant's

1

residence which was the subject of the search warrant.  Simply stated, Defendant argues that the affidavit fails to provide the necessary nexus between the property to be searched and the suspected illegal activity.

Defendant then recognizes that there is a "good faith" exception to the rule that evidence obtained in violation of the Fourth Amendment is generally excluded from evidence.  But, Defendant maintains that the "good faith" exception to the exclusionary rule does not save the evidence from being excluded in this case.

Finally, Defendant posits that statements made by Defendant as a consequence of the unreasonable search and seizure should be suppressed as a result of the application of the "fruits of the poisonous tree" doctrine.

### III.  Materially False Statement

#### A.  Facts

As previously noted Defendant alleges that the affidavit submitted in support of the search warrant to search Defendant's residence located on Bell Church Road, Utica, Knox County, Ohio contained a materially false statement which taints the affidavit and the subsequent issuance of the search warrant.  Two witnesses were called, one by the defense and one by the Government, to testify about this issue.

Detective George Romano, the investigating officer and a member of the Central Ohio Drug Enforcement Task Force, admitted that the affidavit executed on December 19, 2009 in the presence of Judge Paul Spurgeon, Knox County, Ohio Municipal Court Judge, did, in fact, contain a false statement.  Detective Romano described the procedure utilized to prepare the affidavit.  He indicated that the preparation of the affidavit began on the evening of December

18, 2009 in the offices of the Knox County Prosecutor.  Detective Romano assisted Prosecutor Thatcher in the preparation of the affidavit for a search warrant of Defendant's residence at the same time that they were preparing an affidavit for a search warrant of Defendant's father's residence located on adjacent land on Cullison Road, Utica, Knox County, Ohio.  Surveillance of the father's property indicated that what appeared to be boxes of marijuana were off-loaded from a semi-trailer inside a barn on the father's property and the marijuana was placed in the barn.  The facts resulting from the surveillance were accurately included in the affidavit for the search of the father's residence and outbuildings.  That affidavit was complete and contained sufficient information to present probable cause for the issuance of a search warrant for the father's property.

After that affidavit had been prepared, Detective Romano and Prosecutor Thatcher began to prepare the affidavit for Defendant's property.  In this second affidavit, language that the father resided at the Bell Church Road property was included which was in error.  Defendant resided at the Bell Church Road property rather than his father.  The language in the second affidavit provides, "... the person of Jeffrey L. Justice (DOB 05/08/1957) who resides at the residence...."  Defendant's name is Jeffrey A. Justice not Jeffrey L. Justice.  Detective Romano testified that it was a mistake and that he had no discussions with Judge Spurgeon about the mistake when the search warrant was being signed.

On cross-examination the detective testified that it was an innocent mistake and that he had no intention to lie or deceive Judge Spurgeon.  Importantly, Detective Romano further testified that there could not have been any confusion because the correct addresses of the father and son were included in subsequent numbered paragraphs of the affidavit, specifically

paragraphs 5, 9, and 18.

The Knox County Prosecutor, John C. Thatcher, was next called to testify. He recounted the steps taken to prepare the two affidavits. He admitted that after he completed the affidavit for the search warrant of the father's residence, he saved that affidavit on his computer and used it as a template for the preparation of the affidavit to support the issuance of the search warrant for Defendant's residence located on Bell Church Road. Prosecutor Thatcher testified that he thought he had made the necessary changes in the second affidavit to reference Defendant and his residence and exclude, where necessary, the references to the father but apparently had missed the one reference to the father as stated above.

Prosecutor Thatcher indicated that he proofread the second affidavit and Detective Romano also read the affidavit before it was submitted to Judge Spurgeon. The prosecutor maintained that he did not intend to mislead Judge Spurgeon and provided testimony of what occurred at Judge Spurgeon's residence in the early morning hours of December 19, 2009 when the search warrant was signed by the judge.

As was Judge Spurgeon's custom, a tape recording was made of the discussion between Judge Spurgeon, Detective Romano, and Prosecutor Thatcher as Judge Spurgeon reviewed the affidavit. The recording has been incorporated as part of the affidavit pursuant to Ohio Rules of Criminal Procedure Rule 41(C). That tape recording was transcribed and introduced into evidence. A review of the transcription confirms that there were no discussions about the mistake on the affidavit supporting the search warrant for Defendant's residence. The transcript does not indicate that Judge Spurgeon was confused as a result of the mistake.

### B. Law

The statements in an affidavit supporting a search warrant are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, the defendant is entitled to attack the veracity of these statements. *Id*. at 155-156. This conclusion is grounded in the probable cause requirement of the Fourth Amendment, which would be meaningless if affidavits supporting warrants could not be challenged. *Id*. at 168. In order to obtain a hearing on the affidavit the defendant needs to make a "substantial preliminary showing" that statements in the affidavit are intentionally false or were made with reckless disregard for the truth, and that these statements were necessary to the finding of probable cause. *Id.* at 155-156. Allegations of negligence or unintentional mistake are insufficient to entitle the defendant to an evidentiary hearing. *Id.* at 171. The Court of Appeals for the Sixth Circuit elaborated on this point in *United States v. Frazier*, 423 F.3d 539, 539 (6th Cir. 2005), holding a defendant is not entitled to a *Franks* hearing by merely identifying typographical errors in the affidavit.

If the defendant succeeds in making a substantial preliminary showing of falsity or recklessness, the court should set aside all information alleged to be false or reckless. *Franks*, 438 U.S. at 171-172. If the affidavit, absent this information, still supports probable cause, no hearing is required. *Id*. However, if the remaining content is insufficient to support probable cause, the defendant is entitled to a hearing at his request. *Id.* at 172.

### C. Analysis

Based upon the forgoing legal analysis and a review of the affidavit in question, this Court permitted Defendant to proceed with his requested hearing. But, regardless of the spin that Defendant attempts to place on the inaccurate clause contained in the affidavit, it is obvious

5

to this Court that the false statement in the affidavit was the result of inadvertence and negligence.  This Court finds that the false statement was neither knowingly or intentionally made nor was it made with reckless disregard for the truth.  The language was negligently left in the second affidavit and the remaining portions of the four page affidavit contain correct information.  The Court will disregard the one clause that is inaccurate and proceed to examine the affidavit with due regard to Defendant's next issue whether probable cause existed to issue the search warrant.

### IV. Probable Cause

#### A. Facts

Defendant complains that the affidavit submitted in support of the issuance of a search warrant to search Defendant's residence on Bell Church Road lacked the required probable cause for the issuance of the search warrant.  Defendant argues that there is no nexus between the illegal activity that occurred or was occurring in the Cullison Road property and Defendant's residence on Bell Church Road.  The Court agrees.

Three witnesses testified concerning the probable cause issue.  Prosecutor John C. Thatcher described the process he utilized to prepare the affidavit.  He testified that he typed the affidavit from what Detective Romano related to him.  When questioned about Defendant's presence during the unloading of the marijuana from the semi-trailer, the prosecutor admitted that the affidavit did not explicitly state that Defendant was present with his father during the unloading process but it was the prosecutor's understanding that Defendant was present.  Prosecutor Thatcher admitted that the transcript of the discussions with Judge Spurgeon does not clarify whether Defendant was present or not during the off-loading of the marijuana.  When

questioned about Romano's statement that Defendant has been known in the past to have distributed marijuana he obtained from his father, the prosecutor conceded that there was nothing in the affidavit or the transcript that indicated how old the information was, from whom the information was obtained, and if the source of the information had proved to be reliable in the past.  After admitting that no marijuana was found in Defendant's residence, Prosecutor Thatcher testified that the search warrant was not confined to a search for marijuana and that many other items listed in the search warrant could be evidence of drug trafficking.   Seven firearms were confiscated from Defendant's residence.  Prosecutor Thatcher testified that he relied on Detective Romano's experience and he believed that Detective Romano was one of the most experienced officers with whom he had worked.

     Detective Doug Bline was next called to testify.  Detective Bline had performed surveillance of the father's barn on December 18, 2009.  Much of his testimony went far beyond the information provided in the affidavit and, because of that, much of Detective Bline's testimony could not be regarded as evidence on the issue of probable cause.  Some of the testimony did inform on the issue of good faith that was being raised by the Government.

     Detective Bline observed the father as he unloaded the marijuana from the semi-trailer.  Detective Bline also observed the semi truck and trailer leave the father's premises and then approximately three minutes later he saw Defendant drive to the barn.  He later observed Defendant and his father moving equipment and boats from the outside of the barn to the inside of the barn.  The doors to the barn were closed for a little while and then Detective Bline observed Defendant return back to his home on Bell Church Road.  Detective Bline indicated that he did observe Defendant and his father put something in or take something out of the boats

that were being moved but Detective Bline was not able to see what it was. Detective Bline admitted that when Defendant left to go back to his house, he was not carrying anything with him and he was not observed carrying anything into his house when he returned to the Bell Church Road premises.

Detective Romano was the last witness. He testified that he was told that Defendant was present when the marijuana was being unloaded. Detective Romano also confirmed that neither the affidavit nor the transcript of the meeting with Judge Spurgeon provided the source, reliability of the information, or the time frame of the information included in the affidavit and the transcript about Defendant's past drug dealing activities. Detective Romano related his vast experience as an investigator of illegal drug sales and testified that he believed, at the time he signed the affidavit, that Defendant would have had evidence at his residence relative to the marijuana shipment and illegal marijuana distribution.

### B. Law

The Fourth Amendment to the United States Constitution reads "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Probable cause requires a nexus between the place to be searched and the evidence sought. *United States v. Van Shutters*, 163 F.3d 331, 336-337 (6th Cir. 1998) (quoting *United States v. Alix*, 86 F.3d 429, 435 (5th Cir. 1996)). It is the issuing magistrate's duty to determine, looking at the totality of the circumstances, whether there is a fair probability evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The reviewing court, in order to determine whether an affidavit was sufficient to establish probable cause, should look only to the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

A nexus between the property and evidence sought needs to be alleged with particularity. In *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004), the fact that a residence was close to marijuana plants, with a road running nearby, was insufficient to establish this nexus.. In order to establish a nexus between the evidence and the property, the affidavit needed to describe more specifically why it was likely drugs would be on the premises. *Id.* at 595.  The Court noted if the affidavit had said individuals were observed walking on a path from the plants into the house probable cause likely would have been established.  *Id.* at 594-95.  However, without such a fact alleged, the affidavit failed to connect the plants to the residence.  *Id.*

A nexus between the property and evidence is not established solely because a search of the defendant, outside of the property, reveals possession of drugs.  *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006).  The Court noted in some cases it is permissible to infer someone who possesses drugs outside of their residence is likely to have drugs or related paraphernalia in their residence.  *Id.*  In order for this inference to be drawn, however, the affidavit needed to contain an additional fact to allow the magistrate to infer that evidence of wrongdoing would be found in the defendant's home;  for example, the independently corroborated fact that the defendant was a known drug dealer.  *Id.* In *Frazier*, reputation of the defendant as a drug dealer combined with verification he sold drugs at his old residence was not sufficient to establish probable cause.  423 F.3d at 532-33.  In *United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002), observation of the defendant engaging in drug trafficking combined with confirmation of previous drug trafficking charges established the minimal nexus required for probable cause.

Thus, when a defendant is observed engaging in drug related activity outside of his

property, in order to justify a search warrant of his residence a supporting affidavit must contain evidence particularly connecting the evidence sought to the property. These cases indicate that the evidence is required to be independently corroborated or otherwise trustworthy enough to justify an inference that drugs are in the defendant's residence; this requires more than reputation and speculation.

### C. Analysis

The affidavit lacked the necessary probable cause to convince an issuing magistrate that there is a fair probability that evidence of a crime would be found at the Bell Church Road property. That there was evidence to search the father's property on Cullison Road is beyond dispute. But, the affidavit and the transcript of the discussion with Judge Spurgeon which was incorporated by reference into the affidavit does not provide a nexus between the obvious and ongoing illegal activity occurring on Cullison Road and the Bell Church Road property. In addition to there being some apparent miscommunication between the detectives as to when Defendant arrived at the Cullison Road property, the affidavit completely fails to provide a nexus between the evidence sought and the property to be searched.

Taking the affidavit in a light most favorable to the Government, this Court finds the following facts relevant to a search of the Bell Church Road residence:

1. That Defendant was observed on his father's property at or about the time marijuana was delivered to the father's property; and

2. That the truck driver of the semi-truck met Defendant and his father at a barn located on the father's property; and

3. That information received by the affiant leads the affiant to believe that

> Defendant obtains marijuana from his father and Defendant sells the marijuana from his residence on Bell Church Road.

The affidavit is silent regarding how the marijuana supposedly traveled from the father's barn to the Bell Church Road residence. The affidavit is silent about when the officers first learned of the information concerning Defendant's past drug dealings. The affidavit is silent about who provided the drug dealing information and how reliable that person had been in the past. The best that this Court can discern from the four corners of the affidavit with the incorporated transcript is that Defendant was seen on the property where marijuana was unloaded and Defendant may have been a marijuana dealer in the past. These facts do not provide probable cause to search Defendant's residence.

The Government attempted to bootstrap the minimal facts contained in the affidavit with the fact that Defendant is a well experienced detective who, from his training and vast experience, concluded that illegal drug activity was being conducted from the Bell Church Road premises and that marijuana would be found at the residence. This Court agrees that Detective Romano has a good background and that he is one of the best detectives in central Ohio. This Court has worked with Detective Romano all of his professional life and the Court has always been impressed with his knowledge, experience, and professionalism. But, such background and experience cannot magically give life to an otherwise lifeless affidavit. In fact, because of Detective Romano's vast experience and background, this Court is convinced that Detective Romano is aware that this "bare bones" affidavit with conclusory statements cannot pass muster.

### V. Good Faith

Evidence obtained pursuant to a search which violates the Fourth Amendment is

inadmissible in court. *Mapp v. Ohio*, 376 U.S. 643, 655 (1961). The United States Supreme Court carved out an exception to this exclusionary rule to prevent the exclusion of evidence when officers executing the warrant act in good faith. *United States v. Leon*, 468 U.S. 897, 913 (1984). When evidence is seized by officers acting in good faith pursuant to a search warrant which is later found to be unsupported by probable cause, the evidence is admissible. *Id.*

There are four limits to the good faith exception. First, the good faith exception does not apply when the affidavit supporting the search warrant contains a knowing or reckless falsity. *Id.* at 914 (citing *Franks v. Delaware,* 438 U.S. 154 (1978)). Second, the exception does not apply when the magistrate did not perform his or her neutral and detached role in issuing the search warrant and instead acted as merely a rubber stamp for the police. *Id.* (citing *Aguilar v. Texas*, 378 U.S. 108, 111 (1984)). Third, the exception is inapplicable when the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause. *Id.* at 915 (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). Lastly, the good faith exception does not apply when the warrant is so facially deficient -i.e., in failing to particularize the place to be searched or the things to be seized- that the executing officers cannot reasonably presume it to be valid. *Id.* (citing as example *Massachusetts v. Sheppard*, 468 U.S. 981, 988-91 (1984)).

The third exception prevents the admission of evidence seized pursuant to a warrant supported by nothing more than a "bare bones" affidavit. *United States v. Weaver*, 99 F.3d 1376, 1380 (6th Cir. 1996) (citing *Leon*, 468 U.S. at 915). A "bare bones" affidavit is one which merely states suspicions, beliefs, or conclusions without providing some underlying factual circumstances regarding veracity, reliability, or basis of knowledge. *Id.* at 1378 (citation

omitted). A "bare bones" affidavit precludes application of the good faith exception when the officers who executed the warrant did not have a reasonable basis for believing the information submitted supported the warrant. *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004). Although this is a less demanding inquiry than determining whether probable cause existed; an officer's good faith requires a minimally sufficient nexus between the illegal activity and place to be searched. *Id.* at 595-96.

    The minimal nexus necessary to apply the good faith exception has been found when the defendants were known to have participated in the type of criminal activity the police were investigating. The good faith exception was applied in *United States v. Frazier* when the defendant was a known drug dealer and drugs had been found at his former residence. 423 F.3d 526, 536 (6th Cir. 2006). The minimal nexus was also satisfied in *Carpenter*. Though the proximity of the residence to marijuana plants was insufficient to establish probable cause, it was enough of a connection between the residence and evidence sought to not be conclusory and meaningless. *Carpenter*, 360 F.3d at 595-96.

    In *United States v. Schultz*, an officer's expertise combined with the identification of the defendant as a drug dealer was sufficient for an officer in good faith to rely on a warrant to search the defendant's safe deposit box for drug paraphernalia. 14 F.3d 1093, 1098 (6th Cir. 1994). The Court permitted the officer to make the inference that a drug dealer would have evidence in his safe deposit box. *Id.* It also suggested courts should take into account the expertise of the officer when determining whether they acted in good faith. *Id.* However, *United States v. Laughton* suggests the *Schultz* holding is limited to the facts of that case, as the affidavit which was the basis of the inference was highly detailed. 409 F.3d 744, 750 (6th Cir. 2005).

13

*Laughton* further implies *Schultz* erred in taking the officer's expertise into consideration because the standard for good faith is objective. *Id.*

Relevant to this discussion is a case from the Fifth Circuit, *United States v. Barrington*, 806 F.2d 529 (5th Cir. 1986).  The *Leon* Court noted "[n]othing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search."  468 U.S. at 923 n. 24.  In *Barrington*, the Fifth Circuit used this rationale to hold an officer who submits an insufficient "bare bones" affidavit to the magistrate and then executes the warrant himself does not act objectively in good faith.  806 F.2d at 532. In *Weaver* the Sixth Circuit noted this position is a logical extension of *Leon*; but refused to explicitly adopt it. 99 F.3d at 1980.  The Court instead focused solely on whether the officer's reliance was objectively reasonable.  *Id.*  However some of the concerns in *Barrington* are present in the *Weaver* decision.  The Court held an officer could not in good faith rely on a warrant supported by his own affidavit which contained only hearsay connecting the defendant's residence to the evidence sought, without a meaningful attempt to corroborate this information.  *Id.*

In conclusion, evidence seized pursuant to a warrant which is later found to be unsupported by probable cause is admissible if the officer who executed the warrant acted in good faith. *Leon*, 468 U.S. at 913.  An officer does not act in good faith when the affidavit supporting the warrant is a "bare bones" affidavit merely stating conclusions or suspicions. *Weaver*, 99 F.3d at 1980.  The officer's reliance on the warrant must be objectively reasonable, requiring at least a minimal nexus between the residence to be searched and evidence sought. *Carpenter*, 360 F.3d at 595-96.  The minimal nexus is satisfied by confirmed previous criminal

activity or a connection between the residence and evidence sought that is more than conclusory. *See Frazier,* 423 F.3d at 536, *Carpenter*, 360 F.3d at 595-96. In the absence of any corroboration, if the officer makes an inference that evidence will be located in a certain location, it must be on the basis of a highly detailed affidavit. *Laughton*, 409 F.3d at 750.

As this Court already found, the affidavit, as it relates to this Defendant, is nothing more than a statement that Defendant was at the scene of a marijuana delivery sometime before, during, or after the delivery occurred. The affidavit then contains a conclusory statement that Defendant has been involved in marijuana dealings at this residence sometime in the past but such conclusory statement lacks the necessary specificity concerning how, from whom, and when the information was received.

The Government's reliance on the good faith exception is misplaced.

**VI. Fruits of Poisonous Tree**

When evidence is seized during an unlawful search it cannot constitute proof against the victim of the search. *Weeks v. United States*, 232 U.S. 383, 393 (1914). This exclusionary rule has traditionally barred from trial physical, tangible materials obtained during or as a direct result of an unlawful invasion. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). However, verbal evidence which derives from an unlawful entry is also the fruit of official illegality and subject to the exclusionary rule. *Id.* The policies underlying the exclusionary rule (deterring official misconduct and closing the doors of federal courts to unconstitutionally obtained evidence) do not warrant a distinction between physical and verbal evidence. *Id.* (citing as examples *Elkins v. United States*, 364 U.S. 206 (1960); *Rea v. United States*, 350 U.S. 214 (1956)). Therefore, statements obtained during a search pursuant to a warrant unsupported by

probable cause are inadmissible against the victim of the search.

Accordingly, the statements made by Defendant to the authorities after the unlawful search of his premises, despite the fact that Defendant was read his *Miranda* rights and waived those rights, are inadmissible.

### VII. Conclusion

Defendant's Motion to Suppress Evidence (Doc. # 14) is **GRANTED**. The Defendant is not entitled to a *Franks* hearing because the affidavit supporting the warrant does not contain any statements which are intentionally false or made with reckless disregard for the truth. The search warrant was not supported by probable cause because it failed to establish a nexus between Defendant's residence and the evidence sought. The unlawful search cannot be saved by the good faith exception to the exclusionary rule because the affidavit is a "bare bones" affidavit containing only suspicion and conclusions. The statements Defendant made to the authorities are the fruit of an unlawful search and are inadmissible. The evidence collected from Defendant's residence and the statements made by Defendant are suppressed and may not be utilized by the Government at trial.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE